UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C L O S E D

LEO DENNIS GLOVER, #248516,

     Petitioner,

v.

RAYMOND BOOKER,

     Respondent,

_____/

Civil No. 2:08-CV-14519
HONORABLE ANNA DIGGS TAYLOR
UNITED STATES DISTRICT JUDGE


**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING
LEAVE TO APPEAL IN FORMA PAUPERIS**

Leo Dennis Glover, ("petitioner"), presently confined at the Pine River

Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. [1]  In his *pro se* application, petitioner challenges his

conviction for first-degree felony murder, M.C.L.A. 750.316; armed robbery, M.C.L.A.

750.529; felon in possession of a firearm, M.C.L.A. 750.224(f); possession of a firearm in

the commission of a felony [felony-firearm], M.C.L.A. 750.227b; and being a fourth

felony habitual offender, M.C.L.A. 769.12.  For the reasons stated below, the petition for

---

[1]  When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Ryan Correctional Facility, but has since been transferred to the Pine River Correctional Facility.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.  Normally, the Court would order that the caption of the case be amended to reflect that the proper respondent in this case is Percy Conerly, the warden of Pine River Correctional Facility, the current location of petitioner.  However, because the Court is denying the petition, it will not do so in this case. *See Logan v. Booker,* No. 2007 WL 2225887, * 1, n. 1 (E.D. Mich. August 1, 2007).

writ of habeas corpus is **DENIED.**

## I.  Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with his co-defendant, Deray Smith, but with each man having a separate jury.

Samuel Dowdell's preliminary examination testimony was read to petitioner's jury, because Mr. Dowdell had died prior to trial.  Dowdell testified that he was with his friend Timothy Allen at a store in Highland Park, Michigan.  As the men were exiting Mr. Allen's truck, Dowdell was approached by two men from behind who pushed him up against the truck and struck him with pistols.  The men demanded money from Dowdell and threatened to kill him.  After Dowdell gave the men his money, one of the men ran around to the other side of the truck to confront the victim.  A struggle began with the victim, which eventually involved not only the other man who had assaulted Dowdell but also a third man who had jumped out of a nearby car.  This third man eventually shot Mr. Allen several times.  Dowdell testified that all three of the men had guns but he was unable to identify any of the men.

One of petitioner's accomplices, Johnny Ray Moore, agreed to testify against petitioner and Mr. Smith, in exchange for being allowed to plead guilty to a reduced charge of second-degree murder.  Moore testified that on the evening of November 16, 2002, petitioner, Smith, and another co-defendant, Keith Ross, approached Moore and told him that they were going to Highland Park to rob someone.  Moore testified that

2

petitioner drove the other three men to a store in Highland Park.  Smith and Ross went in to check out the store.  Moore sat in the backseat of the car and acted as a lookout. Petitioner remained behind the wheel.  Ross came out of the store and talked with petitioner about possible robbery victims.  Moore testified that when Allen and Dowdell exited the store, Smith and Ross followed them to Allen's truck.  Smith followed Allen to the driver's side and Ross followed Dowdell to the passenger's side.  Moore testified that Allen began to struggle.  In response to Smith's cry for help, petitioner exited the car, first to help Ross with Dowdell, and then to assist Smith with Allen.  Moore testified that after Ross also joined in the struggle with the victim, petitioner stated "step back" and then fired two shots into the car.

Moore testified that he ran into petitioner and Smith several days after the shooting, where the men told him to keep his mouth shut.  Several days after petitioner and the other men were arrested, Moore was kidnapped by petitioner's relatives and taken to Smith's house, where he was beaten and threatened to remain silent.

A Highland Park police officer testified that he responded to the scene of the shooting and called for an EMS unit.  This officer preserved the scene, took photos of the area, and discovered a blue steel automatic weapon 100 feet from where Allen had been shot.

Michigan State Police officers testified that when they responded to the scene they discovered suspected blood, a .380 handgun found on the passenger side of Allen's truck, a spent bullet and spent casings.

3

Based upon information received during their investigation, police obtained a search warrant for a house on Gladstone Street in Detroit.  During the course of this search, petitioner and his co-defendant Smith were found hiding in the attic.  Trooper Ed Price of the Michigan State Police testified that a 9 mm. handgun was found next to where petitioner had been hiding in the attic.  This firearm had dried blood on the trigger guard.  Michigan State Police personnel testified that they had received samples of DNA from the murder victim, petitioner, and two of the co-defendants and compared with the DNA of the blood that had been removed from the trigger guard from this weapon.  It was determined to be a "one in trillions" chance that someone other than the petitioner left the blood found on the trigger guard of this firearm.  Ballistics experts further concluded that the spent bullets recovered at the scene and taken from the victim were fired from the 9 mm. handgun.

Petitioner's conviction was affirmed on appeal. *People v. Glover,* No. 254263 (Mich.Ct.App. August 9, 2005); *lv. den* .474 Mich. 1099; 711 N.W.2d 74 (2006). Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Glover,* No. 03-003196-03 (Third Circuit Court, Criminal Division, May 7, 2007).  The Michigan appellate courts denied petitioner's post-conviction appeal. *People v. Glover,* No. 281975 (Mich.Ct.App. January 24, 2008); *lv. den.* 482 Mich. 971, 755 N.W.2d 177 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court's failure to instruct petitioner's jury that aiders and abettors

4

must have the necessary specific intent to be guilty of a specific intent crime constitutes reversible error as it denied him a fair trial.

II. The petitioner was denied a fair trial as the result of prosecutorial misconduct where the prosecutor made improper remarks during argument.

III. The conviction and sentence of petitioner on both felony murder and the predicate felony constitute double jeopardy.

IV. Petitioner was denied the effective assistance of counsel where his trial counsel failed to present exculpatory witnesses at trial.

V. Petitioner was denied effective assistance of appellate counsel and due process guaranteed him by the Sixth and Fourteenth Amendments of the U.S. Constitution when appellate counsel failed to raise significant issues which would have provided a reasonable probability sufficient to undermine the confidence of the outcome of the appeal.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

5

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

In reviewing a habeas corpus petition to determine whether the state court decision was based on an unreasonable determination of facts, a federal court applies a presumption of correctness to the factual findings made by the state court. *Warren v. Smith,* 161 F. 3d 358, 360 (6th Cir. 1998).  A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* at 360-61.

### III.  Discussion

#### A. Claim # 1.  The jury instruction claim.

Petitioner first contends that he was deprived of a fair trial because the trial court failed to instruct the jury that aiders and abettors must have the same specific intent as the principal in order to be convicted of aiding and abetting in the underlying crime. [2]

In rejecting this claim, the Michigan Court of Appeals noted that the trial court had correctly instructed the jury on the intent required to convict petitioner of being an

---

[2]  Respondent contends that petitioner's first, second, and third claims are procedurally defaulted. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  Given that petitioner's claims are without merit, it is easier for the Court to deny the claims on the merits.

aider and abettor. *Glover,* Slip. Op. at * 1-2.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).

Where a state appeals court finds that the instruction given by the trial court accurately reflected state law, this Court must defer to that determination and cannot question it. *Seymour v. Walker*, 224 F. 3d 542, 558 (6th Cir. 2000).  In this case, because the Michigan Court of Appeals determined that the jury instruction accurately reflected the elements of aiding and abetting, petitioner is not entitled to habeas relief on his first claim. *See Williams v. Withrow,* 328 F. Supp. 2d 735, 752-53 (E.D. Mich. 2004).

**B.  Claim # 2.  The prosecutorial misconduct claim.**

Petitioner next contends that the prosecutor committed misconduct by denigrating the defense in her rebuttal argument.

The Michigan Court of Appeals rejected petitioner's claim, finding that the prosecutor's remarks were proper, because they were made in response to defense counsel's closing remarks, in which counsel argued that Johnny Ray Moore should not

be believed and that the DNA evidence which linked petitioner to the murder weapon
was inconclusive. *Glover,* Slip. Op. at * 2.

When a petitioner seeking habeas relief makes a claim of prosecutorial
misconduct, the reviewing court must consider that the touchstone of due process is the
fairness of the trial, not the culpability of the prosecutor.  On habeas review, a court's
role is to determine whether the conduct was so egregious as to render the entire trial
fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-
56 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas case,
consideration should be given to the degree to which the challenged remarks had a
tendency to mislead the jury and to prejudice the accused, whether they were isolated or
extensive, whether they were deliberately or accidentally placed before the jury, and,
except in the sentencing phase of a capital murder case, the strength of the competent
proof against the accused. *Id.*

Although an attorney must not be permitted to make unfounded and inflammatory
attacks on an opposing advocate, a prosecutor's statements in closing argument
regarding defense counsel must be viewed in context. *United States v. Catlett*, 97 F. 3d
565, 572 (D.C. Cir. 1996).  In the present case, the prosecutor did not improperly
denigrate defense counsel with these remarks, in light of the fact that the prosecutor's
comments were made to rebut defense counsel's argument that Johnny Ray Moore
should not be believed and that the DNA evidence was inconclusive. *See U.S. v. Martin,*
520 F. 3d 656, 661 (6th Cir. 2008).  The prosecutor's comments were not improper,

8

because when viewed in context, they attacked defense counsel's arguments, not defense

counsel personally. *See United States v. Xiong,* 262 F. 3d 672, 675 (7th Cir. 2001).

Moreover, even if the if the prosecutor's comments about petitioner's defense

counsel were improper, petitioner is not entitled to habeas relief on his claim because

they were not flagrant enough to justify habeas relief. *See Henley v. Cason,* 154 Fed.

Appx. 445, 447 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his second

claim.

### C.  Claim # 3.  The Double Jeopardy Claim.

Petitioner next contends that his convictions for first-degree felony murder and

armed robbery violate the Double Jeopardy Clause of the United States Constitution.

The Michigan Court of Appeals rejected this claim, noting that under Michigan

law, "there is no double jeopardy violation when the armed robbery and felony murder

convictions are based on different victims." *Glover,* Slip. Op. at * 2 *(citing People v.*

*Wilson*, 242 Mich. App 350, 360-362; 619 N.W. 2d 413 (2000)).  The Michigan Court of

Appeals concluded that the record established that petitioner's armed robbery conviction

was based on his participation in the robbery of Samuel Dowdell, while the felony

murder conviction was based on the shooting death of Timothy Allen during the

attempted robbery of Allen. *Id.*

The Double Jeopardy Clause serves the function of preventing both successive

punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273

(1996).  The protection against multiple punishments prohibits the government from

"punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995)(quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)).  Although the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984).  Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is essentially a question of legislative intent. *Id.* at 499.

In deciding a habeas petitioner's Double Jeopardy claim, a federal habeas court is bound by a state appellate court's interpretation of different state statutes to permit a defendant who is convicted of multiple offenses to be punished for both offenses. *See Palmer v. Haviland,* 273 Fed. Appx. 480, 486-87 (6th Cir. 2008).  Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *See Banner v. Davis,* 886 F. 2d 777, 780 (6th Cir. 1989).  The Michigan Court of Appeals determined that it is permissible under Michigan law for a defendant to be convicted of  first-degree felony murder and armed robbery, so long as the convictions involve separate victims.  This Court sitting on federal habeas review is bound by that determination. *Id.*  Because this determination is binding in federal habeas corpus, petitioner's Double Jeopardy claim lacks merit. *See Rodgers v. Bock,* 49 Fed. Appx. 596, 597 (6th Cir. 2002).  Because the Michigan Court of Appeals clearly held that multiple punishments for the two crimes are

10

permissible under Michigan law, the state trial court did not violate petitioner's federal right against Double Jeopardy. *Palmer,* 273 Fed. Appx. at 487.

**D.  Claims # 4 and # 5.  The ineffective assistance of counsel claims.**

The Court will consolidate petitioner's ineffective assistance of counsel claims for judicial clarity.  In the fourth claim, petitioner contends that he was deprived of the effective assistance of trial counsel.  In his fifth claim, petitioner alleges that he was deprived of the effective assistance of appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  Petitioner must prove: (1) that counsel's performance fell below an "objective standard of reasonableness;" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984); *See also Culp v. U.S.,* 266 F. Supp. 2d 606, 608-09 (E.D. Mich. 2003).  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687; *Culp,* 266 F. Supp. 2d at 609.  "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Culp,* 266 F. Supp. 2d at 609.  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

11

In his fourth claim, petitioner first contends that his trial counsel was ineffective for failing to call his relative, Melvin Garrett, as an alibi witness.  Garrett submitted an affidavit dated February 28, 2005, in which he stated that he and his wife asked petitioner to come over to their house for the weekend of November 15 through November 17, 2002, to babysit his nephews.  Garrett claimed that petitioner spent the entire weekend at his house.  Garrett specifically claimed that petitioner was with him at his house at the time of the shooting on November 16, 2002, because they were at the house together babysitting the children and watching movies.  Garrett claims that petitioner's attorney never contacted him.

In rejecting this claim, the Michigan Court of Appeals held that there was no evidence that petitioner, Garrett, or anyone else notified petitioner's trial counsel about petitioner's alleged alibi.  Accordingly, there was no evidence that petitioner's trial counsel acted unreasonably in failing to call Garrett as a witness. *Glover,* Slip. Op. at * 3.

In order to prevail on his ineffective assistance of counsel claim, petitioner must overcome the Michigan Court of Appeals' factual finding that petitioner's counsel was never advised by petitioner about his alibi defense or any witnesses in support of that defense. *See Bigelow v. Williams,* 367 F. 3d 562, 571 (6th Cir. 2004).  This "is no small task[.]", because this Court must presume that the state court's factual findings are correct, unless petitioner can overcome the presumption of correctness by clear and convincing evidence. *Id.*

12

Although Garrett signed an affidavit which indicated that petitioner was with him on the night of the shooting, there is nothing in Garrett's affidavit which states that either he or petitioner ever informed counsel about this fact. "[I]n view of the deferential standard of review that applies in this setting," *See Bigelow,* 367 F. 3d at 571, this Court finds that petitioner has failed to rebut the Michigan Court of Appeals' factual finding that petitioner failed to inform his trial counsel about his alibi witness so as to obtain habeas relief on this claim.

Moreover, assuming counsel was somehow made aware of Mr. Garrett, any decision not to call petitioner's relative as an alibi witness was not objectively unreasonable, because he was a close family member of petitioner's with a strong motive to fabricate an alibi defense on petitioner's behalf. *See Ball v. United States,* 271 Fed. Appx. 880, 884 (11th Cir. 2008); *cert. den.* 129 S. Ct. 473 (2008). As such, his "testimony would not have been particularly compelling and would have been subjected to vigorous impeachment." *Id.;See also United States ex. rel. Emerson v. Gramley,* 883 F. Supp. 225, 236-37 (N.D. Ill. 1995)(counsel not ineffective in failing to call petitioner's mother and ex-wife as alibi witnesses, because they were "patently interested witnesses" who would have added little value to the case). In particular, as the Wayne County Prosecutor noted in their answer to petitioner's motion to remand for a *Ginther* Hearing, Garrett claimed that petitioner came to his house to babysit his nephews, yet Garrett also claimed that he stayed with petitioner and babysat the children at the time of the shooting. To quote the Wayne County Prosecutor, "[W]hy would someone call for a

13

babysitter, if they were there themselves to babysit?" [3]  In light of Garrett's relationship to petitioner, as well as the problems with the credibility of his story, petitioner has failed to establish that he was prejudiced by counsel's failure to call Garrett as an alibi witness.

Petitioner next contends that counsel was ineffective for failing to call co-defendant Keith Ross as a defense witness.  Ross submitted an affidavit, in which he claims that he lied to the police when he informed them that petitioner was involved in the robbery and murder.  Ross claims that he made these false allegations in order to get revenge against petitioner for a situation which involved Ross's girlfriend.  Ross further states in the affidavit that petitioner was not with them on the night that the crimes were committed.  Ross, however, had previously pleaded guilty to a reduced count of second-degree murder.  During his plea hearing, Ross informed the court that petitioner had shot and killed the victim.

Petitioner has failed to show that counsel was ineffective for failing to call Ross as a defense witness.  First, Ross did not sign his affidavit until after petitioner's trial. Because there is no indication that counsel was aware of Ross's intent to recant his statement to the police until after petitioner's trial, counsel was not ineffective for failing to call Ross to testify.

At the time of petitioner's trial, the only information before trial counsel was that Ross had told the police that petitioner was the shooter and that Ross had pleaded guilty

---

[3] *See* Answer in Opposition to Defendant's Motion to Remand for a *Ginther* Hearing, p. 4[This Court's Dkt. # 10-14].

to second-degree murder, where he had again informed the court that petitioner had shot

the victim.  The failure to call a co-defendant to testify as a defense witness is not

ineffective assistance of counsel where counsel is aware that the co-defendant has

previously "pointed the finger" at the defendant. *See Robbins v. Mitchell,* 47 Fed. Appx.

380, 385 (6th Cir. 2002).   In light of Ross' pretrial statement and plea allocution, both of

which pointed to petitioner as the shooter in this case, counsel's failure to investigate or

call Ross as a witness for the defense did not fall outside the wide range of

professionally competent assistance. *See Pole v. Randolph*, 570 F. 3d 922, 946 (7th Cir.

2009).  In light of the fact that Ross had implicated petitioner in the shooting in his

pretrial statements to the police, as well as in at his plea allocution, it is unlikely that

Ross's testimony would have been helpful to petitioner, because Ross would have been

subjected to "withering cross-examination" based on these earlier statements which

inculpated petitioner in the crime. *See Lewis v. Bennett,* 435 F. Supp. 2d 184, 198

(W.D.N.Y. 2006).  Petitioner is not entitled to habeas relief on his fourth claim.

   In his fifth claim, petitioner contends that his appellate counsel was ineffective for

failing to raise additional ineffective assistance of trial counsel claims on his direct

appeal. [4]

---

   [4]  Respondent contends that petitioner's fifth claim is procedurally defaulted, because he raised it for the
first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise the issue
in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).  Petitioner, however, could not have
procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review
was the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004);
*Johnson v. Warren,* 344 F. Supp. 2d 1801, 1089, n. 1 (E.D. Mich. 2004).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard. "

> *Id.* at 463 U.S. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6ᵗʰ Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(*quoting Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6ᵗʰ Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

16

Petitioner initially claims that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to present an affirmative defense, namely, for failing to present any alibi witnesses, expert witnesses, or defense witnesses "whatsoever." To the extent that petitioner is referring to trial counsel's failure to present an alibi defense or to call Keith Ross to provide exculpatory testimony, appellate counsel did raise this claim on petitioner's direct appeal, so this portion of petitioner's claim is without merit. With respect to the remainder of this claim, petitioner fails to specify what defense witnesses or expert witnesses that trial counsel should have called, to support his assertion that appellate counsel should have raised this claim on his direct appeal. Because this portion of petitioner's ineffective assistance of appellate counsel claim is conclusory and unsupported, petitioner is not entitled to habeas relief on such a claim. *See e.g. Workman v. Bell,* 178 F. 3d 759, 771 (6th Cir. 1998).

Petitioner next contends that appellate counsel should have raised a claim that trial counsel was ineffective for failing to raise a defense that the police planted the murder weapon at the home on Gladstone Street at the time of petitioner's arrest. In support of this claim, petitioner points to the fact the Michigan State Police laboratory report contains the date "11-18-02", but that the murder weapon was recovered by the police at the house where petitioner was arrested the following day. Petitioner contends that this would establish that the murder weapon had actually been recovered at the crime scene prior to the date that this laboratory report was opened.

As respondent indicates in their answer, petitioner has provided no evidence to

17

the Court to establish that the date of November 18, 2002 was the date that the 9 mm.
pistol that was recovered at the time of petitioner's arrest was actually tested, so as to
support petitioner's claim that this gun was somehow planted by Trooper Price at the
time of petitioner's arrest on November 19, 2002.  The reference to the date of
November 18, 2002 could simply be the date that the investigation was opened.  In fact,
the report indicates that the report was completed on December 30, 2002.  Therefore, it is
entirely possible that the murder weapon was not tested until after its recovery by
Trooper Price on November 19, 2002.

Moreover, any argument that the murder weapon was somehow planted by
Trooper Price would have been of no value to petitioner, in light of the fact that
petitioner's blood was recovered from the gun.  Even if this gun was recovered at the
crime scene, it would still establish that petitioner was involved in this crime, either as
the principal, or as an aider and abettor.  At best, any theory that the murder weapon was
"planted" near petitioner would have merely established that he was not the actual
shooter, but it would not have absolved him of liability for first-degree felony murder as
an aider and abettor.  Under Michigan law, a defendant's participation in an armed
robbery, while either he or his co-defendants were armed with a loaded firearm,
manifests a wanton and reckless disregard that death or serious bodily injury could
occur, to support a finding that the defendant acted with malice aforethought, so as to
support a conviction for felony-murder on an aiding and abetting theory. *See Hill v.
Hofbauer,* 337 F. 3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be

inferred from the aider and abettor's knowledge that his cohort possesses a weapon.");

*See also Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*; People v. Turner,* 213 Mich. App. 558, 572-73; 540 N. W. 2d 728 (1995)*;overruled in part on other grounds People v. Mass,* 464 Mich. 615; 628 N.W. 2d 540 (2001); *People v. Hart*, 161 Mich. App. 630, 635; 411 N.W. 2d 803 (1987); *Meade,* 265 F. Supp. 2d at 858-59.

Because petitioner has failed to show that he was prejudiced by trial counsel's failure to pursue a defense that the murder weapon was planted, he has failed to show that he was deprived of the effective assistance of trial counsel or that appellate counsel was ineffective for failing to raise this claim on appeal. *See U.S. v. Williams,* 562 F.3d 938, 941-42 (8th Cir. 2009).

Petitioner lastly alleges that appellate counsel should have raised a claim that trial counsel was ineffective for opening the door to Detective Powell's testimony regarding the search warrant for the Gladstone residence and the fact that the warrant was based on co-defendant Ross's statement to the police that petitioner and others participated in the murder.

Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S.  123, 127-28 (1968).

Assuming that the admission of Ross's statements to Detective Powell violated petitioner's Sixth Amendment right of confrontation, petitioner cannot show that he

19

would have been acquitted but for Powell's testimony regarding Ross's statement.  One of petitioner's accomplices, Johnny Ray Moore, provided detailed testimony regarding petitioner's involvement in the planning and the execution of the murder and armed robbery.  In addition, the murder weapon was found next to where petitioner was hiding in an attic.  This same weapon tested positive for Petitioner's DNA.  Finally, the fact that petitioner was attempting to hide from the police is proof of his involvement in this crime, since evidence that a defendant has been hiding when he was arrested is admissible to show consciousness of guilt. *See e.g. United States v. Dorman,* 108 Fed. Appx. 228, 242 (6th Cir. 2004).

In the present case, any deficiency by trial counsel in opening of the door to the admission against petitioner of his co-defendant's otherwise inadmissible confession did not prejudice petitioner and did not amount to ineffective assistance, where Ross's statement was neither the only evidence nor the strongest evidence of petitioner's guilt. *See Bridges v. Cason,* 198 Fed. Appx. 491, 492-93 (6th Cir. 2006).  Accordingly, appellate counsel was not ineffective for failing to raise this claim on appeal.

Because petitioner has failed to show that his trial counsel was ineffective, petitioner is unable to establish that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his appeal of right. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 883 (E.D. Mich. 2002).

Moreover, assuming that appellate counsel was ineffective for failing to raise the underlying ineffective assistance of trial counsel claims contained in petitioner's fifth

20

claim, petitioner is unable to show that he was prejudiced by appellate counsel's failure to do so, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000).  The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise these three ineffective assistance of trial counsel claims in his appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987)).  In this case, there is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided on more than one occasion. *Gardner*, 817 F. 2d at 189.  Petitioner is not entitled to habeas relief on his fourth or fifth claims.

## IV.  Conclusion

For the reasons stated, the Court concludes that petitioner is not entitled to federal habeas relief on the claims contained in his petition.

Before petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the

petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37.

Having conducted such a review, the Court concludes that petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. A certificate of appealability is not warranted in this case nor should petitioner be granted leave to proceed on appeal *in forma pauperis* as any appeal would be frivolous. *See* Fed. R.App. P. 24(a).

## V. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.


DATED: August 27, 2009                    **s/Anna Diggs Taylor**
                                          ANNA DIGGS TAYLOR
                                          UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 27, 2009.

Leo Glover, #248516
Ryan Correctional Facility
17600 Ryan Road
Detroit, MI 48212

s/Johnetta M. Curry-Williams
Case Manager

23